NINA E. JEWETT *v.* MATTHEW PUDLO ET AL.

February Term, 1933.

Present: SLACK, MOULTON, and THOMPSON, JJ., and BUTTLES, Supr. J.

Opinion filed May 1, 1934.

250

*Raymond Trainor* for the defendants.

*Fenton, Wing, Morse & Jeffords* for the plaintiff.

THOMPSON, J.  This is an action of tort to recover damages for personal injuries received by the plaintiff in an automobile accident through the alleged negligence of the defendants.  The defendants Cardinal and Monette are partners under the firm name and style of Vermont Food Sales Company.  Defendant Pudlo was an employee of the partners.  The accident was caused by the negligence of defendant Pudlo in the operation of a truck owned by the partners while he was acting within the scope of his employment.  There was a trial by jury and a verdict and judgment against all three defendants.

At the time of rendering the judgment, the plaintiff moved for a certified execution against all three defendants, under the provisions of G. L. 2384. There was a hearing on the motion. The court found that neither of the partners were present when the accident occurred; that they did not direct or advise the actual handling of the truck at the time of the accident; that they are liable solely by reason of the rule of *respondeat superior;* that, were Pudlo the sole defendant found liable, the evidence warrants the finding that the cause of action arose from his wilful and malicious act or neglect, and that he ought to be confined in close jail. The court held as matter of law that it could not impute such wilful and malicious act or neglect of the defendant Pudlo to the defendants Cardinal and Monette; that "as matter of law the execution can be no greater or carry no more severe consequences as against the three defendants than warranted against the least culpable." The motion was denied as a matter of law, and the plaintiff was allowed an exception. This is the only exception relied upon by the plaintiff.

The plaintiff concedes that the execution in this case must follow the judgment; that the nature of the execution must be the same as to all defendants found jointly liable where, as here, the right to an execution against the body of a defendant depends upon the nature of the action; that a separate body execution against one defendant on a joint judgment against two or more cannot be upheld; that if the plaintiff is not entitled to a certified execution against Cardinal and Monette, the masters, she is not entitled to one against Pudlo, the servant.

The only question briefed by the plaintiff is whether the court below erred in holding as matter of law that it could not impute the wilful and malicious act or neglect of the defendant Pudlo, the servant, to the defendants Cardinal and Monette, his masters, for the purpose of warranting a finding that the cause of action arose from the wilful and malicious act of all three defendants, and that they ought to be confined in close jail, under the provisions of G. L. 2384. This is the first time this question has been raised in this Court.

The plaintiff argues that the right to arrest a defendant in a tort action, even though his liability is based on the rule of *respondeat superior,* and to keep him in close jail in default of bail has never been questioned; that the rights of a plaintiff

against a master, who has been held liable for the negligent acts of his servant, which, as here, are found by the court to be wilful and malicious, should, at least after verdict and judgment, equal those which he had at the beginning of the proceedings.

██ ██ The rights of the plaintiff in this case after verdict and judgment, aside from the provisions of G. L. 2384, are equal to those she had at the beginning of the proceedings. Since the action is one of tort, the plaintiff is entitled to an execution against the bodies of all three defendants. *Hunt* v. *Burdick*, 42 Vt. 610. That she is entitled to such an execution appears clearly from the provisions of G. L. 2384, that the certificate of the finding of the court that the cause of action arose from the wilful and malicious act, etc., must be stated "in or upon such execution." "Such execution," because of the nature of the action, must be an execution against the body of the defendant. The only distinction known in the law of this State between commitments to jail and those to close jail, on execution, is to be found in the provisions of G. L. 2384. If it. is certified in accordance with the provisions of the statute that a defendant ought to be confined in close jail, he shall not be admitted to the liberties of the jail yard, but in other cases defendants may be so admitted under the provisions of G. L. 2381. The only difference between prisoners in jail and those in close jail is that the former may be admitted to the liberties of the jail yard on giving bonds, as provided by G. L. 2381, and the latter may not. Until admitted to the liberties of the jail yard in cases where defendants may be so admitted, there is no difference in law between the mode of their confinement and that of those not entitled to be so admitted. *Vermont Life Ins. Co.* v. *Dodge,* 48 Vt. 156, 161.

██ ██ It is true, as argued by the plaintiff, that a defendant arrested in a tort action, even though his liability is based on the rule of *respondeat superior,* is confined in close jail in default of bail, but it is also true that such a defendant confined in jail on an ordinary body execution is confined in close jail if he does not give bonds as provided by G. L. 2381.

The rule in New York, that a body execution may issue against a defendant in a tort action, who is liable under the rule of *respondeat superior,* as stated in *Davids* v. *Brooklyn Heights R. Co.,* 104 App. Div. 23, 93 N. Y. S. 285, affirmed,

254

182 N. Y. 526, 74 N. Y. 1116, and *Ossmann* v. *Crowley*, 101 App. Div. 597, 92 N. Y. S. 29, which are relied upon by the plaintiff, is not different from the rule in this State.

In *Soule* v. *Austin*, 35 Vt. 515, 518, this Court, referring to G. L. 2384, said: "The statute is intended to apply to cases of tort, and not to breaches of contract. Its object is twofold, partly remedial, partly punitory; to furnish a more effectual remedy to a party who has suffered injury from the wanton and malicious act or conduct of another, and to punish such offender for such wanton and wicked violation of another's rights." The judgment awarding a close jail execution is no part of the principal judgment of the cause. It is independent of, and collateral to, the principal judgment. *Spaulding* v. *Woodworth*, 42 Vt. 570. Whether the wrongful act or neglect of the defendant was wilful and malicious or not, is usually for the trial court to determine on an application for a certificate under the statute. That fact may be determined upon what is disclosed at the trial, where there has been a full trial, or the court may, in its sound discretion, require a further hearing. *Robinson* v. *Wilson*, 22 Vt. 35, 52 A. D. 77; *Whiting* v. *Dow*, 42 Vt. 262; *Melendy* v. *Spaulding*, 54 Vt. 517, 521. But the certificate cannot be allowed without a consideration of the evidence. *Stowe* v. *Powell*, 46 Vt. 471. In that case the defendant moved for a continuance; but, failing to show cause therefor, the court rendered judgment for the plaintiff, and referred the case to the clerk for the assessment of damages. No trial was had, and no evidence was put in on either side. Upon the rendition of the judgment, the court, upon motion of the plaintiff, granted a close jail execution. This Court held that the awarding of the certificate, without evidence, and against the protest of the defendant, was error; and the judgment of the county court awarding a close jail execution was reversed.

The general rule is that the awarding of the certificate is so far a question of fact and matter of discretion by the trial court that it is not revisable, if there is any supporting evidence. *Wellman* v. *Mead*, 93 Vt. 322, 338, 107 Atl. 396; *Larrow* v. *Martell*, 92 Vt. 435, 439, 104 Atl. 826; *Hill* v. *Cox*, 54 Vt. 627; *Melendy* v. *Spaulding*, *supra*; *Whiting* v. *Dow*, *supra*; *Robinson* v. *Wilson*, *supra*. But where, as here, the facts are spread upon the record by the findings of the trial court, it is a question of

law whether such facts entitled the plaintiff to a certificate, and the decision of the trial court is revisable by this Court. *Styles* v. *Shanks,* 46 Vt. 612, 616; *Smith* v. *Ladrie,* 98 Vt. 429, 129 Atl. 302.

This Court has held that the term ''Wilful and malicious act or neglect,'' as used in G. L. 2384, signifies a wrongful act done intentionally without just cause or excuse; that the malice contemplated is involved in the intentional doing of a wrongful act, in disregard of what one knows to be his duty, to the injury of another. *North Adams Beef & Produce Co.* v. *Cantor,* 103 Vt. 514, 518, 156 Atl. 879; *Wellman* v. *Mead, supra,* 93 Vt. at pages 339, 340, 107 Atl. 396, and cases cited. In the many cases passed upon by this Court involving the awarding of a close jail certificate, which we have examined, there was only one defendant, and the only question was whether the evidence in the case warranted a finding that his wrongful act was wilful and malicious within the meaning of the statute. No case has been called to our attention where the plaintiff moved for a close jail execution against a defendant whose liability was vicarious.

The plaintiff says that a master is held to full responsibility for the wilful and malicious act or neglect of his servant done in the course of his employment, and that this extends not only to liability but also to remedy. She cites *Ploof* v. *Putnam,* 83 Vt. 252, 75 Atl. 277, 279, 26 L. R. A. (N. S.) 251, 138 A. S. R. 1085, as full authority for this statement. In that case defendant's servant, who was caretaker and had sole charge of defendant's island in Lake Champlain and was impliedly authorized to keep off trespassers and intruders, pursuant to his master's instructions to keep off trespassers, unmoored plaintiff's sloop from defendant's dock and refused to permit the plaintiff to tie thereto in a storm, in consequence of which the sloop and her cargo were lost and the plaintiff and his family thrown into the lake and injured. The extent of the decision in that case was to repudiate the common-law doctrine that a master was not answerable for a wilful or malicious act of his servant, though done in the line of the servant's duties, unless he directed or assented to it, and to adopt the modern rule that a master is liable for the act of his servant under the rule of *respondeat superior,* though it be wilful and malicious, when it is done in fur-

therance of the master's business and within the scope of his servant's employment.

An instruction to the jury complained of in that case was that it was established by the uncontradicted evidence that the servant cast off the rope and·''that in so doing he was acting within the scope of his employment as a servant of the defendant. * * * *So that* * * * *the defendant stands as though he had been present and had himself done the act.* * * *'' This Court, holding that the instruction was warranted by the evidence, said: ''In these circumstances the court was right in the instruction given; the act being within the scope of the agency and done for the master's benefit, *the defendant's liability was the same as if he had done it himself.*'' The plaintiff says that it does not appear in that case that the question was raised as to the awarding of a certified execution against the defendant, the master; but she contends that the language of the Court approving the foregoing instruction is sufficient to warrant the conclusion that, if the question had been raised, it would have been decided that a certified execution should have been awarded.

This contention cannot be sustained. Under the modern rule adopted in that case, whenever the master is liable under the rule of *respondeat superior* for the wrongful act of his servant done within the scope of the servant's employment, whether it was wilful and malicious or not, the master stands as though he himself did the wrongful act. See *May* v. *Bliss,* 22 Vt. 477; *Andrus* v. *Howard,* 36 Vt. 248, 84 A. D. 680; *Small* v. *Ball,* 47 Vt. 486.

Since one of the objects of the statute is the punishment of the offender, we think that, by analogy, the rule as to the awarding of exemplary or punitive damages against a master who is liable in damages to the plaintiff only under the rule of *respondeat superior,* is applicable in· this case. Such damages are awarded only by way of punishment of the offender, and as a warning to others. To render a master liable in exemplary damages for the wilful, malicious, or wanton act of the servant done within the scope of his employment, some misconduct of the master beyond that which the law implies from the mere relation of master and servant, must be shown. *Maisenbacker* v. *Society Concordia,* 71 Conn. 369, 42 Atl. 67, 71 A. S. R. 213.

Our rule as to the awarding of exemplary damages against a master for the wilful, malicious, or wanton act of the servant, is the rule of the federal Supreme Court, as stated in *Lake Shore, etc., Ry. Co.* v. *Prentice*, 147 U. S. 101, 37 L. ed. 97, 13 Sup. Ct. 261, 263. The rule is that, though the master is liable for compensatory damages for a wrongful act done by his servant within the scope of his employment, he cannot be held liable for exemplary damages by reason of the wilful, malicious, or wanton intent upon the part of the servant, unless it be shown that he directed the act complained of, or participated in it, or subsequently ratified it. *Willett* v. *Village of St. Albans*, 69 Vt. 330, 337, 38 Atl. 72, 75; *Wells* v. *Boston & Maine R. R.*, 82 Vt. 108, 120, 71 Atl. 1103, 137 A. S. R. 987; *Bishop* v. *Readsboro Chair Mfg. Co.*, 85 Vt. 141, 154, 81 Atl. 454, 36 L. R. A. (N. S.) 1171, Ann. Cas. 1914B, 1163; *Sparrow, Admr.* v. *Vermont Savings Bank*, 95 Vt. 29, 32, 112 Atl. 205.

In *Willett* v. *St. Albans, supra,* this Court said: "A party asking for the rendition of such damages must either bring his suit against the servant or agent guilty of the wrongful conduct, or, if he brings his action against the principal, establish that the principal was also guilty of the wrong by directing, participating in, or subsequently approving of the wrong. On this basis the exemplary or punitive damages are made to fall upon the offender. They are a punishment to him, and a warning to others not to offend, and secure the only purpose for awarding them. They are never suffered to fall on a party innocent of the offense, for which they are the punishment.

In *Hagan* v. *Providence, etc., R. R. Co.*, 3 R. I. 88, 62 A. D. 377, the court said that they did not see how such damages could be allowed where the principal was prosecuted for the tortious act of his servant, "unless there is proof in the case to implicate the principal and make him *particeps criminis* of his servant's act."

In *Lake Shore, etc., Ry. Co.* v. *Prentice, supra,* the Court said that exemplary damages, "being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender and as a warning to others, can only be awarded against one who has participated in the offense."

Since the term "wilful and malicious act or neglect," as used in the statute, signifies a wrongful act done intentionally

without just cause or excuse, we think, applying the rule as to the awarding of exemplary damages against a master for the wilful and malicious act of his servant, in this case, that the wilful and malicious act or neglect of Pudlo, the servant, cannot as matter of law be imputed to Cardinal and Monette, his masters, for the purpose of warranting a finding that the cause of action arose from their wilful and malicious act or neglect and that they ought to be confined in close jail; that as matter of law such a finding is warranted only in the event that it is made to appear that they directed the wrongful act of their servant, or participated in it, or subsequently ratified it. ·

██ ██ The burden of proving that the cause of action arose from the wilful and malicious act or neglect of Cardinal and Monette, the masters, is upon the plaintiff as the moving party. *North Adams Beef & Produce Co.* v. *Cantor, supra.* But it does not appear, nor can it reasonably be inferred, from the facts found that they directed the wrongful act of their servant, or participated in it, or subsequently ratified it. In the absence of such a finding, it cannot be said that the court below erred in refusing to award a certified execution against all three defendants.

*Judgment affirmed.*

NINA E. JEWETT, ADMX. *v.* MATTHEW PUDLO ET AL.

February Term, 1933.

Present: SLACK, MOULTON, and THOMPSON, JJ., and BUTTLES, Supr. J.

Opinion filed May 1, 1934.

*Raymond Trainor* for the defendants.

*Fenton, Wing, Morse & Jeffords* for the plaintiff.